No. 45,232

THE STATE OF KANSAS, *Appellee*, v. CHESTER LEE CLIFT, *Appellant*.

(449 P. 2d 1006)

Opinion filed January 25, 1969.

*Ronald R. McEnulty*, of Wichita, argued the cause and was on the brief for the appellant.

*Richard K. Hollingsworth*, Deputy County Attorney, argued the cause and *Robert Londerholm*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, C. J.: Defendant appeals from a conviction of robbery in the first degree as defined by K. S. A. 21-527.

No contention is made as to the sufficiency of the evidence to sustain the conviction. A detailed recital of the facts is therefore unnecessary.

In brief—defendant was positively identified as the man who held up two cashiers of a supermarket and robbed them of approximately $500.00. One of the eye-witnesses was a nephew of one Bennett—at whose home defendant had been staying for a week or two. Apparently "things were getting pretty hot"—and defendant and Bennett shortly departed for Oklahoma. At the time of the robbery defendant was wearing black trousers and a white T-shirt. When he departed for Oklahoma he left the pants and shirt in a closet at the Bennett house. During their investigation police officers went to the Bennett home. Mrs. Bennett gave the pants and shirt to them.

Only two contentions are made in this appeal.

The first concerns the panel of jurors in attendance—and it is argued defendant's "challenge to the array" was erroneously overruled.

The basis of this contention is two-fold.

It appears that of the list of jurors regularly summoned for duty several were excused beforehand by the court for health, family or hardship reasons. It also appears that nine or ten were excused by the bailiff over the telephone for like reasons.

K. S. A. 43-118, being a general statute relating to jurors, provides that any person may be excused from serving on a jury when it shall appear to the court that the interests of such juror or those of the public will be materially injured by his attendance, or when the state of his own health or that of any member of his family requires his absence.

K. S. A. 43-154, relating to the drawing, summoning and attendance of jurors in Sedgwick county, provides in subsection (1) thereof that—

"Jurors shall appear on the day and time summoned before the judge of the court designated in the summons, and such judge shall determine all excuses of such persons from jury service according to the best interest of the public, and the individual or his family. Those not excused shall be retained as the panel for said division of the court."

While K. S. A. 20-312, a general statute relating to the duties of a bailiff—and K. S. A. 1968 Supp. 20-614a, relating to the duties of a bailiff in a county the size of Sedgwick—authorize and empower a bailiff to perform and carry out all duties which may be required of

him by the judge—no where in the statutes does it appear that a bailiff is authorized to excuse jurors summoned for duty or that the judge may delegate such authority to him. Defendant argues that the excusing of jurors is strictly a judicial function which can be performed only by the judge and that because of the procedure shown here the end result amounted to more than a mere "irregularity" and that his challenge to the array was erroneously denied, citing *The State v. Jenkins*, 32 Kan. 477, 4 Pac. 809.

As a practical matter we venture to say that there have been instances in perhaps every judicial district in this state in which prospective jurors have been excused from reporting by the bailiff or court reporter—all with the approval of the judge. In a strict technical sense, however, we agree with defendant's contention that the excusing of jurors is a judicial function to be exercised only by the judge. Notwithstanding our disapproval of the practice shown here—it does not necessarily follow that the challenge to the array was well taken. In the *Jenkins* case, above, jurors were selected from sources other than authorized by statute, and the case is not in point. Here, all jurors remaining on the panel—having been selected as provided by statute—were qualified to serve. Furthermore, there is absolutely nothing in the record to indicate that in the selection of the jury to try this case defendant was in any way prejudiced by the fact that a few of those summoned had been excused by the bailiff—all of which was approved by the judge. Under the facts shown the matter amounted to no more than an irregularity and constituted no ground on which to challenge the array ( *State v. Snyder,* 126 Kan. 582, 584, 270 Pac. 590; opinion denying a rehearing, 127 Kan. 7, 272 Pac. 169). K. S. A. 62-1718 provides that on appeal this court must render judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. As to this point—the challenge to the array was properly denied.

K. S. A. 43-154 provides that in a county the size of Sedgwick the names of prospective jurors are taken from the bound volumes of the personal property assessment rolls of the county. The record shows that for the year in question there were approximately 114 bound volumes containing the names of persons owning taxable personal property such as automobiles—and the like. There were approximately 20 bound volumes containing the names of persons who owned no taxable personal property. Defendant is a negro, and con-

tends the drawing of names from only those lists of persons owning taxable personal property directly results in the exclusion of many negroes from jury service—the argument being that a lower percentage of negroes own automobiles or other taxable personal property than white persons. The record is silent as to whether any of those excused by the court or bailiff were negroes. There were no negroes on the remaining panel.

Defendant's contention on this point—which consists of only his bald assertion—cannot be sustained. The lists of persons in question—both taxable and nontaxable—are prepared without regard to race. The record contains nothing even remotely to indicate that negroes are disproportionately represented in the lists of personal property taxpayers. Systematic or purposeful exclusion of members of a race from jury service may not merely be assumed or asserted—it must be established by proof. The question was discussed briefly in *State v. Woods,* 191 Kan. 433, 381 P. 2d 533, cert. den. 376 U. S. 919, 84 S. Ct. 676, 11 L. ed 2d 615. Later, Woods sought relief by federal habeas corpus, and, in denying relief, the Circuit Court of Appeals (10th Circuit) said—

". . . a negro defendant in a criminal case is not constitutionally entitled to be tried by a jury upon which there is a member, or members, of his race, and he is entitled to relief only upon proof submitted by him which discloses a 'purposeful discrimination' to exclude members of a class from the jury panel." (p. 950) *Woods v. Munns,* 347 F. 2d 948 (1965).

See also *State v. Palmer,* 173 Kan. 560, 570, 251 P. 2d 225 and *State v. Lopez,* 182 Kan. 46, 50, 51, 318 P. 2d 662. As to this point the challenge to the array likewise was properly denied.

Defendant's other contention is that the pair of black pants and the white T-shirt which he had left in the closet of the Bennett home and which were turned over to the police by Mrs. Bennett—were erroneously admitted in evidence. When they went to the Bennett home the officers had no search warrant, and it is contended the incident amounted to an illegal search and seizure and therefore the property so "seized" was inadmissible in evidence.

In passing, it should be stated that during the robbery when defendant was placing a pistol back in his pants pocket it was accidentally discharged—in the pocket. At the trial it was established by expert testimony that a hole in the pocket was made by a bullet fired from the inside.

There are at least two reasons why defendant's contention as to this matter cannot be sustained.

In the first place the record does not establish there was a "search and seizure." The pants and shirt were voluntarily turned over to the officers by Mrs. Bennett.

Secondly—the status of defendant at the Bennett home was—at most—merely that of a "guest"—a relationship which he had in fact abandoned by fleeing to Oklahoma. He had absolutely no possessory interest in the premises. In *Wheeler v. State*, 202 Kan. 134, 446 P. 2d 777, it was held:

"One who has no interest in premises, either of a proprietary or possessory character, has no standing to invoke the constitutional guaranty of immunity from unreasonable search and seizure." (Syl. 1.)

See also *State v. Edwards*, 197 Kan. 146, 415 P. 2d 231.

We find no error in the record. Defendant's motion for a new trial was properly overruled. The judgment is affirmed.