The appellant, Harvey Lee Windsor,[1] was convicted of murder made capital because the murder was committed during the course of a robbery. § 13A-5-40(a)(2), Code of Alabama 1975. The jury unanimously recommended the death penalty. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
 I
The appellant initially argues that he was denied a fair and impartial trial because, he says, members of the circuit court clerk's office excused potential jurors from service without the supervision of a judge. He maintains that the clerk's or assistant clerk's excusing potential jurors from jury duty was arbitrary and unlawful and that it resulted in a tainted venire. The appellant argues, among other things, that the practice of allowing the clerk's office personnel to excuse jurors resulted in certain classes of jurors being under-represented.
The appellant's counsel timely moved to quash the jury venire based on the fact that prospective jurors were being excused by employees of the clerk's office without supervision by a judge. A hearing was held on this motion at which time Jean Browning, clerk of the Circuit Court for St. Clair County, testified. She stated that it was the practice of her office to excuse jurors based on telephone conversations. Mrs. Browning testified that of the jury pool that had been summoned for service during the week of the appellant's trial, she personally had excused only 2 or 3 people out the approximately 30 people who were excused by telephone, with the remainder having been being excused by various personnel in the clerk's office. She testified as follows concerning the reasons her office used for determining who to excuse: *Page 1015 
 "A — We did not excuse anyone for work-related excuses. We excused students that were taking exams and people who were on vacations and elderly people and physically impaired people.
 "Q — Could it have been for purely arbitrary reasons that some of these people were deleted from this list?
"A — What do you mean?
 "Q — If someone called that was a friend and they called someone in this courthouse to be let off. That could have happened on this list, could it not?
"A — I suppose.
 "Q — What I'm saying, the process is sometimes subject to abuse, is that not correct?
"A — I don't think we abuse it."
The court heard the testimony and denied the motion to quash the venire stating, "Your motion is overruled. I think we have done it the only way we can do it." The trial court erred to reversal in making this ruling. Amendment V of the Bill of Rights of the United States Constitution provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law. . . ."
Alabama's statutory scheme for summoning jurors is set forth in §§ 12-16-70 through 12-16-146, Code of Alabama 1975. The relevant statutes dealing with the issue before us are §12-16-74 and § 12-16-145. Section 12-16-74 states, in pertinent part:
 "The court shall require the names to be called from the venire list of all persons who have been served with a summons to appear in court that day for service as jurors and whose service has not been previously excused or postponed. The court may hear any excuses not previously heard and shall pass upon the qualifications of those in attendance. The court may in any case, including capital cases, excuse or postpone the service of any prospective juror outside the presence of the parties and their counsel in accordance with the provisions for excusal contained in section 12-16-63."
(Emphasis added.)
Section 12-16-145, entitled "Alternate juror selection and qualification plan; master list, random selection; disqualification," states, in pertinent part:
 "Notwithstanding any provision of Title 12, Chapter 16, the presiding circuit judge, with the consent of the circuit judges of the court, may elect to utilize the following alternate juror selection and qualification plan after notice to the administrative director of courts. . . .
". . . .
 "Prior to the date on which a prospective juror has been summoned to appear, the presiding circuit judge, or a court official designated by him, shall have the authority to disqualify the prospective juror or to excuse or postpone his service to any future date, notwithstanding the provisions of any other law."
(Emphasis added.)
Once a system such as the foregoing is adopted, assuming that it is constitutionally sound, then the due process rights of American citizens attach to that system. The above statutes vest the sole authority for excusing potential jurors in thejudge or in a court official designated by the presidingcircuit judge of that circuit. See §§ 12-16-74 and -145. In this case, the clerk of the Circuit Court for St. Clair County and her employees were not designated by the presiding judge of St. Clair Circuit Court to select and qualify jurors. The circuit court clerk is an elected official. The procedure for selecting clerical personnel in the circuit courts varies from county to county. This procedure is not entirely within the control of the appointing authority; for example, many counties have personnel boards that impose qualifications and rules. Neither the circuit court clerk nor any clerical personnel in the clerk's office has the statutory power, beyond that granted the clerk by a presiding circuit judge, to excuse perspective jurors from service. Section 12-16-145. The circuit judge has no power to hire or to fire employees of the circuit court clerk's office. We note that at the hearing on the motion to quash the venire, the circuit court clerk testified that she could not state the reasons, if there were any, why the 30 prospective jurors had been excused from service. *Page 1016 
This court, in Jackson v. State, 640 So.2d 1025 (Ala.Cr.App. 1992), remanded on other grounds, 640 So.2d 1050 (Ala. 1993), addressed the issue of whether the excusal of prospective jurors by the clerk's office violated § 12-16-74. In Jackson, we did not discuss the alternate juror selection procedures provided for in § 12-16-145. We determined that the provisions of § 12-16-74 had been violated, but we held that the error was harmless. Judge McMillan, writing for the majority, stated:
 "The trial court's statement during the hearing, that it had not actually excused any of these potential jurors at that time, and his ruling in excusing them, pursuant to § 12-16-63, Code of Alabama 1975, served only to mask the error. However,in light of the reasons given by the jurors who wereexcused and the number of jurors remaining on thepanel prior to voir dire, no reversible erroroccurred."
(Emphasis added.)
We now specifically overrule Jackson in which we held that the violation of these jury selection and qualification statutes was harmless error. We consider that such a violation always constitutes reversible error because a violation of those statutes impinges the integrity of the jury selection process.
As early at 1871, the appellate courts in this state had occasion to uphold Alabama's statutory scheme concerning the summoning and selecting of petit juries. The court characterized the relevant statutes as follows:
 "The constitution of the State gives the right of trial by jury, and the legislature has prescribed how this jury shall be summoned and selected. Const. Ala. 1867, Art. 1, §§ 8, 12; Rev. Code, § 4173. The manner of drawing each member of the jury until the jury is made up, and the number and causes of the challenges, are all carefully designated by law. — Rev. Code, §§ 4177, 4178, 4179, 4180, 4182, 4183. The rules thus laid down are peremptory, and it is the right of the accused to have each strictly complied with. They are a portion of the formalities which constitute a proceeding 'by due process of law.' If it were permitted to disregard one of these formalities . . . all might be set at naught."
Boggs v. State, 45 Ala. 30, 31-32 (1871). (Emphasis added.) Concerning adherence to a statutory system of drawing and summoning a jury, the Missouri Court of Appeals has stated:
 " 'We do not mean to say that there was any fraud practiced in this case. That is beside the point. The legislature has seen fit to prescribe the manner of selecting juries. The officers charged with this duty must at least substantially comply with the procedure prescribed. Courts are not authorized to ignore, emasculate, or set aside the statutory provisions.' "
State v. McCaw, 668 S.W.2d 603, 604 (Mo.App. 1984). (Emphasis added.)
The practice of the clerk's office excusing jurors has specifically been criticized by other courts. Biegajski v.State, 653 S.W.2d 624 (Tex.App. 1983); Stephenson v. State,494 S.W.2d 900 (Tex.Cr.App. 1973); State v. Clift,202 Kan. 512, 449 P.2d 1006 (1969), cert. denied, 396 U.S. 910,90 S.Ct. 225, 24 L.Ed.2d 186 (1969). In Biegajski, the Texas court explained that the procedure of allowing the clerk's office to excuse jurors is "tantamount to a practice which at least ostensibly allows county officials [and employees] to arbitrarily grant exemptions, without the trial court's knowledge." 653 S.W.2d at 629. A Maryland court of appeals has expressed "serious doubt of the propriety of selecting a jury in the Clerk's office. . . ." Green v. State, 23 Md. App. 680,329 A.2d 731, 734 (1975). The Kansas Supreme Court, although affirming the conviction in Clift, supra, because it held the error to be harmless, observed:
 "As a practical matter we venture to say that there have been instances in perhaps every judicial district in this state in which prospective jurors have been excused from reporting by the bailiff or court reporter — all with the approval of the judge. In a strict technical sense, however, we agree with defendant's contention that the excusing of jurors is a judicial function to be exercised only by the judge."
Clift, 449 P.2d at 1008.
In Joyner v. State, 251 Ga. 84, 303 S.E.2d 106 (1983), the Georgia Supreme Court faced *Page 1017 
a similar violation of the Georgia statute that specifically provided that the judge would excuse jurors. The record inJoyner disclosed that 27 jurors had been excused from jury duty by the clerk of the superior court and that 5 had been excused by the sheriff. The Georgia Supreme Court stated that this procedure constituted a "violation of the integrity of the jury selection process, and an alteration of the array of traverse jurors to such extent as to deprive this defendant of her proportional share of peremptory strikes." 303 S.E.2d at 107.
Alabama's § 12-16-145, vests the authority to excuse prospective jurors either in the presiding circuit judge or in a court official specifically designated by that presiding judge. Clearly, the intent of the legislature was that §12-16-145, and § 12-16-74 would work hand-in-hand. The legislature intended that when a court official is designated to select and qualify jurors, that function is to be performed under the supervision of a judge. Section 12-16-145 was not meant to unilaterally remove from the court the authority for excusing jurors, but rather to provide the court with supervised assistance. Neither § 12-16-74 nor § 12-16-145 was complied with in this case.
Because a violation of the statutory provisions relating to the summoning of jurors occurred here, we hold that this defendant was denied a fair trial, and we reverse the conviction. We agree with the 1871 Boggs court that the jury summoning provisions "are 'a portion of the formalities which constitute a proceeding 'by due process of law.' If it were permitted to disregard one of these formalities . . . all might be set at naught." 45 Ala. 30, 31-32 (1871). The appellant is entitled to a new trial.
The appellant also argues that he had the right to be present when the prospective jurors were excused from jury service. At one time, the accused had the right to be present at that stage of the proceedings. McLemore v. State, 34 Ala. App. 34,36 So.2d 452 (1948); Crump v. State, 28 Ala. App. 103, 179 So. 392
(1938). Code 1940, Tit. 30, §§ 5, 63, 64 (repealed). The current statute, however, specifically states that the appellant does not have the right to be present when potential jurors are excused. Section 12-16-74, Code of Alabama 1975. "A judge in a capital case may excuse members of the venire outside the presence of the defendant and his counsel. . . ."Ex parte Pierce, 612 So.2d 516, 519 (Ala. 1992).
In the interest of efficiency, we will address the additional issues presented that may be raised in subsequent proceedings.
 II
The appellant argues that the prosecutor committed reversible error in his closing argument during the guilt stage of the proceedings by commenting on the exercise by the accused of his right to remain silent. If the prosecutor so commented, then, of course, the constitutional right against self-incrimination itself was violated. Amendment V of the Constitution of the United States states, in pertinent part, "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ." The necessary corollary to this fundamental right is that the accused's silence should not be the subject of comment by the prosecutor.
The prosecutor made the following comment:
 "That intent — whether Mr. Harvey Lee Windsor pulled the trigger of that sawed-off shotgun or whether [Colon] Lavon Guthrie did it — is still there. The intent to kill. Intent is a state of mind — something that is rarely capable of positive proof. I expect the Judge will tell you that. If we could get into that mind over there and put out here what is in there, we would have no reason for a jury."
(Emphasis added.)
The Alabama Supreme Court in Ex parte McWilliams,640 So.2d 1015 (Ala. 1993), set forth the standard to be used when evaluating the comments of counsel concerning the failure of the defendant to testify. The court stated:
 "In Ex parte Williams, 461 So.2d 852, 854 (Ala. 1984), the prosecutor directly commented on an absence of testimony with regard to a specific circumstance regarding which only the defendant could *Page 1018 
have testified. In that case the Court of Criminal Appeals held:
 " 'In a case in which there has been a direct reference to a defendant's failure to testify and the trial court has not acted promptly to cure the comment, the conviction must be reversed. Whitt [v. State, 370 So.2d 736, 739
(Ala. 1979)]. In a case in which there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error there must be a virtual identification of the defendant as the person who did not become a witness. Ex parte Yarber, 375 So.2d 1231, 1234 (Ala. 1979).'
461 So.2d at 854."
McWilliams, 640 So.2d at 1020.
The comment made by the prosecutor in this case was a direct reference to and comment on the appellant's exercise of his constitutional right to remain silent. The comment directly referred to the appellant and referred to what was in the mind of the appellant at the time of the killing — something only he would know. Therefore, we agree that the prosecutor committed reversible error.
 III
The appellant also asserts that his arrest was illegal and that, therefore, any evidence discovered as a result of that arrest should have been suppressed. The appellant was arrested at a rest area in the state of Tennessee. The evidence showed that Officer Neil Cox of the Hamilton County, Tennessee, Sheriff's Department saw a vehicle that matched the description of a "Be On the Lookout" (BOLO) radio dispatch that the department had received from Alabama. The dispatch stated that the two white suspects were driving a 1970's model Plymouth Volare automobile and that one of the suspects was wearing a black baseball cap. The dispatch indicated that both suspects were to be considered armed with guns and extremely dangerous. As Officer Cox neared the vehicle, he saw the two occupants, one of whom was wearing a black baseball cap, and he noticed that the car had a Georgia license plate. Cox immediately called for backup. When Cox and the other officers who responded to his backup call approached the car with their guns drawn, they ordered the occupants to get out of the vehicle. When the two left the car, Officer Cox saw, in plain view between the two front seats, a .20 gauge short-barreled shotgun. The occupants were arrested and a search of the appellant revealed a .25 caliber automatic pistol.
The appellant argues that the police did not have probable cause to stop him and that the state failed to show the basis for issuing the BOLO that led to his arrest. The United States Supreme Court has spelled out the law on this issue. InUnited States v. Hensley, 469 U.S. 221, 105 S.Ct. 675,83 L.Ed.2d 604 (1985), the Supreme Court stated:
 "[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, see United States ex rel Kirby v. Sturges, 510 F.2d 397, 400-401 (CA7) (Stevens, J.), cert. denied, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975), to pose questions to the person, or to detain the person briefly while attempting to obtain further information. See Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). . . ."
(Emphasis added.) In this case, the officers in the jurisdiction that issued the BOLO should have been required to provide the court with the facts underlying the "reasonable suspicion" for issuing the BOLO. According to the testimony of law enforcement officials in this case, this was not done. The state, in any subsequent proceedings, should present the grounds it had for issuing the BOLO if the fact of the stop and evidence resulting from it are to be offered into evidence.
 IV
The appellant also argues that the trial court erred in allowing evidence of a collateral crime that occurred in another county in Alabama to be introduced into evidence. This identical issue was thoroughly addressed by this court in the appeal of the co-defendant *Page 1019 
in this case. See Guthrie v. State, 616 So.2d 914 (Ala.Cr.App. 1993). The receipt of evidence of the collateral crime was lawful.
 V
The appellant next argues that the indictment against him was fatally flawed because, he says, the indictment failed to state the specific amount of money taken in the robbery.
 "Prior to the enactment of §§ 13A-8-40 et seq. of the 1975 Code of Alabama, there was no statutory robbery in Alabama and the offense was derived from the common law. See Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962); Watts v. State, 53 Ala. App. 518, 301 So.2d 280 (1974). Common law robbery required a 'taking' of property from the person of another, Wilson v. State, 268 Ala. 86, 105 So.2d 66 (1958), although the amount or value of the property taken was immaterial, Sanders v. State, 289 Ala. 224, 266 So.2d 802 (1972); Harris v. State, 44 Ala. App. 449, 212 So.2d 695 (1968).
 "The present robbery statutes, however, do not require a 'taking' of property, Marvin v. State, 407 So.2d 576 (Ala.Cr.App. 1981); Ala. Code §§ 13A-8-40 through 13A-8-44 (1975) (Commentary), so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. The operative words of the current robbery statute are 'in the course of committing a theft,' which includes an attempted theft, Marvin v. State, supra, rather than the common law element of an actual 'taking from the person.'
 "In our judgment, therefore, the indictment here sufficiently charged the offense or robbery. The alleged variance between it and the proof in this case related to an immaterial fact, and appellant's motion to exclude was correctly overruled."
Grace v. State, 431 So.2d 1331, 1333 (Ala.Cr.App. 1982). Because the amount taken in a robbery is not an element of the offense under our current robbery statutes, §§ 13A-8-40 through13A-8-44, the indictment was sufficient to apprise the appellant of the charges against him.
For the reasons stated above, the appellant is entitled to a new trial. The appellant's conviction is reversed and his sentence of death by electrocution is vacated. This cause is remanded to the Circuit Court for St. Clair County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
BOWEN, P.J., and PATTERSON, J., concur.
McMILLAN and MONTIEL, JJ., concur in the result in part and dissent in part, with opinions.
[1] The appellant's co-defendant, Lavon Guthrie, was convicted of capital murder. This court recently reversed his conviction inGuthrie v. State, 616 So.2d 914 (Ala.Cr.App. 1993).