[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1362 
In a consolidated trial, David Walter Rogers and Donnis George Musgrove were convicted of capital murder and both were sentenced to death. The Court of Criminal Appeals reversed their convictions, based on what that court ruled was the improper admission of evidence of their flight from police nearly two months after the murder. Rogers and Musgrove v.State, 630 So.2d 78 (Ala.Crim.App. 1991). On certiorari review, this Court reversed, ruling that there had been no error in the admission of the flight evidence. Rogers andMusgrove v. State, 630 So.2d 88 (Ala. 1992). On remand from this *Page 1363 
Court the Court of Criminal Appeals addressed the remaining issues raised on appeal and then affirmed the convictions.Rogers and Musgrove v. State, 638 So.2d 1347 (Ala.Crim.App. 1992).
This Court has granted each defendant's petition for certiorari review. Rule 39(c), A.R.App.P. In their petitions, Musgrove raised 16 issues for review and Rogers raised 15. All but four of the issues were presented to and treated in great detail by the Court of Criminal Appeals in its two prior opinions in this case.[1] We address only the newly raised issues and one issue previously considered by the Court of Criminal Appeals — whether during closing arguments at the guilt phase of the trial the district attorney improperly commented on the defendants' failure to testify and, thus, violated their constitutional right not to testify.
 I. Facts
In the early morning of September 27, 1986, two men armed with handguns broke into a small house in Robinwood, in Jefferson County, Alabama. The house was occupied by Coy Eugene Barron, his wife Libby, their baby, and an overnight guest, Jamie Crawford, who was asleep on a mattress in the living room. The men kicked in the front door of the darkened house and proceeded directly to the single bedroom where Coy and Libby and their baby were sleeping.
Coy awoke and attempted to hold the bedroom door closed while his wife stood behind him, holding the baby. The men forced the door open and when Coy picked up a bottle as if to throw it at them, they each fired a shot. One of the shots missed, but the other fatally injured Coy. After the shots, the men quickly fled.
On October 1, 1986, Libby Barron was shown a five-photograph "lineup" of potential suspects, which included photos of both Musgrove and Rogers. She identified the two as her husband's killers, but wanted to see a live lineup. Musgrove and Rogers were arrested on November 22, 1986, following a lengthy, high-speed automobile chase in the area of Decatur, Alabama, which ensued when they fled from a police officer who was attempting to pull them over for driving a vehicle that did not have a license plate other than a dealer's tag. At the time of their arrest, both defendants were escapees from prison work release programs and Rogers was under a sentence of life imprisonment. On December 5, 1986, Libby Barron identified both Musgrove and Rogers in separate live lineups.
In February 1987 the defendants were indicted for capital murder. Musgrove was charged with intentionally causing the death of Coy Barron by shooting him with a pistol during the course of a burglary, Ala. Code 1975, § 13A-5-40(a)(4). Rogers's indictment contained the same count as Musgrove's and contained a second count alleging that he committed the murder while under a sentence of life imprisonment, Ala. Code 1975, §13A-5-40(a)(6).
At trial, in February 1988, the defendants presented alibi evidence that they had been in Bradenton, Florida, staying with Musgrove's aunt from August 28 until October 6, 1986, and that they had never left her house for more than a few hours at a time. The State rebutted this testimony by presenting evidence that a wallet and identification that were in Rogers's possession at the time of his and Musgrove's arrest had last been seen by the wallet's owner in the glove compartment of his automobile, which had been parked in front of his apartment in suburban Atlanta, Georgia, on September 28, 1986, the day following the murder.
The jury found both defendants guilty of capital murder, and at the sentencing phase of the trial the jury returned a verdict recommending the death penalty. On May 20, 1988, the trial judge sentenced the defendants to death.
 II. Separation of the Jury
Musgrove and Rogers contend that they are due a new trial because they say the jury "separated" during a Sunday recess of their trial and the separation was without their consent. Section 12-16-9(a), Ala. Code 1975, provides: *Page 1364 
 "If the accused and his counsel and also the prosecuting attorney, in any prosecution for a capital felony consent thereto in open court, the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial, whether the jury has retired or not. A separation so permitted shall not create a presumption of prejudice to that accused, but on the contrary it shall be prima facie presumed that the accused was not prejudiced by reason of the separation of the jury."
Where a separation occurs in violation of such a statute, there is a presumption of prejudice to the accused. Reeves v.State, 432 So.2d 543, 547-48 (Ala.Crim.App. 1983). Musgrove and Rogers contend not only that a separation occurred, but that the separation was in violation of the statute and that the State has failed to rebut the presumption of prejudice. In response, the State argues that the record reveals only that the trial judge allowed family visitation during the Sunday recess if the jurors chose to have family visitation and that the defendants have not shown that there was an actual "separation" of the jury. The State further contends that unless the defendants can first show that the jury improperly separated, there is no presumption of prejudice for the State to overcome. We agree.
Neither Musgrove nor Rogers objected at trial to the Sunday recess. Thus, this issue is being raised for the first time on this certiorari review. Accordingly, the issue was not properly preserved for appeal and is reviewable only under the plain error standard. Rule 39(k), A.R.App.P.; Ex parte McWilliams, [Ms. 1911242, January 29, 1993] ___ So.2d ___ (Ala. 1993). We further note that before trial defense counsel objected to the court's decision to sequester the jury and suggested that a Sunday recess be taken, stating that the case had not received much publicity and was not expected to receive more during trial. For the defendants now to contend that the Sunday recess requested by defense counsel caused a "separation" of the jury that entitles them to a new trial nearly rises to the level of invited error.
Although the defendants vigorously argue that the trial court's allowing visitation rights for the jurors' family members during the Sunday recess constituted an improper "separation" of the jury, our review of this allegation of error is limited to what is found in the record. See Bush v.State, 333 So.2d 186, 188 (Ala. 1976). The record contains no indication that jurors actually received visitation from family members or that, if they did, any visitation amounted to a separation of the jury. The jurors were properly instructed by the trial judge not to discuss the case with anyone. Absent a showing in the record, it is not this Court's province to speculate as to what actually occurred during the Sunday recess. Accordingly, we find no plain error.
 III. Jury Instructions on Felony Murder and Accomplice Liability
Both Musgrove and Rogers contend that the jury was not properly charged that it could return a felony murder conviction based on accomplice liability against either defendant if it found that the other was guilty of felony murder as the actual killer. They contend that the accomplice liability charge did not include an instruction that a defendant could be found guilty of felony murder by accomplice liability because the charge instructed the jury that accomplice liability required an intentional killing. Thus, they argue that the charge given precluded the jury from applying accomplice liability while considering the lesser included offense of felony murder, which does not require an intentional killing. In response, the State argues that proper instructions were given on both felony murder and accomplice liability.
Neither Musgrove nor Rogers objected to the jury charges at issue during trial and they have not previously raised the issue on appellate review. Accordingly, the issue is reviewable only under the plain error standard. Rule 39(k), A.R.App.P. We further note that during a conference with the trial judge before the jury charges were given, counsel for both Musgrove and Rogers objected to the court's giving of an instruction on felony murder. Defense counsel objected *Page 1365 
to jury charges on any lesser included offenses. For the defendants now to argue that they should be granted a new trial based on the contention that an offense they did not want the jury to consider was charged in such a way as to preclude the jury from finding them guilty on that charge, again, comes close to invited error.
We have examined the record and conclude that the jury was fully and adequately charged on both felony murder and accomplice liability. The record shows that the felony murder charge was immediately followed by the accomplice liability charge. Although the accomplice liability charge did instruct the jury that an intentional killing was required, the immediately preceding charge had properly instructed the jury that under the felony murder doctrine the element of intent is supplied by the commission of a felony.
In review of a trial court's jury charge, individual instructions are not to be isolated or taken out of context, but must be considered in light of all the instructions. Exparte Holifield, 562 So.2d 254, 255 (Ala. 1992); Alexander v.State, 601 So.2d 1130, 1133 (Ala.Crim.App. 1992). Taken as a whole, these charges properly instructed the jury on the application of accomplice liability to felony murder. Accordingly, we find no deficiency in these jury charges that rises to the level of plain error.
 IV. Jury Instruction on Determining Credibility of Witnesses and Finding Facts
Musgrove and Rogers contend that a jury instruction regarding the credibility of witnesses and the truthfulness of testimony removed from the jury its exclusive right to be the finder of fact and denied the defendants a fair trial. The jury instruction that the defendants now claim is improper stated:
 "Now, if you find that you cannot reasonably reconcile the testimony of all the witnesses so as to make them all speak the truth then you should determine what testimony you find to be true and what testimony you find to be untrue, consider that which you find to be true and disregard that which you find to be untrue."
(Emphasis added.)
The defendants contend that a jury instruction to reconcile all the testimony and to weigh the testimony of different witnesses differently only if such reconciliation is not possible requires that a juror initially take all the testimony of all the witnesses as true. They contend that such an instruction is "functionally identical" to an instruction to presume that the witnesses are testifying truthfully, which would have prevented the jury from disbelieving any testimony that was not contradicted. Under Alabama law, there is no presumption that a witness is testifying truthfully. Ex parteHolifield, 562 So.2d 254, 255 (Ala. 1990); Williams v. State,520 So.2d 179, 181 (Ala.Crim.App. 1987).
Neither Musgrove nor Rogers objected to the jury charges at issue during trial and they have not previously raised the issue on appellate review. Accordingly, the issue is reviewable only under the plain error standard. Rule 39(k), A.R.App.P. The State contends that this individual jury instruction does not constitute plain error because, it says, the jury charge, when taken in its entirety, clearly informed the jurors that they were the sole factfinders and judges of the witnesses' credibility. We agree.
In Ex parte Holifield, we found that a nearly identical jury instruction to reconcile the testimony so that the witnesses have spoken the truth was merely harmless error because the charge in its entirety "cured" the error found in that isolated instruction. 562 So.2d at 255. As previously noted, in review of a trial court's jury charge, individual instructions are not to be isolated or taken out of context, but must be considered in light of all the other instructions. Id.; Alexander, 601 So.2d at 1133. In this case, the record reveals that the trial judge repeatedly instructed the jurors that they were to be the sole finders of fact and weighers of the witnesses' credibility. For example, the trial judge stated:
 "As jurors you are the triers and finders of facts in these cases[,] from the evidence[,] in determining and deciding the *Page 1366 
guilt or innocence of each of these Defendants. . . .
 "As jurors you are the sole and exclusive judges of the evidence and the weight and sufficiency of the evidence[,] and not only that, you are the sole judges of the credibility of the witnesses. You are to determine what weight you will give to the testimony of witnesses and in making that determination[,] among other things[,] you may consider any interest, any bias, any prejudice, any relationship or any other thing that you may find a witness has if in your judgment it may tend to keep that witness from testifying to the truth. . . .
 "The testimony of an expert witness[,] even though they have had ample opportunity to experiment and examine the subject matter on which they testify[,] is not binding upon the jury. Such testimony has been submitted for you to weigh and consider with all the other testimony and evidence in this case. . . .
 "Now, it is a matter of law that if a witness has heretofore been convicted of a crime involving moral turpitude it goes to his credibility as a witness; in other words, the jury may take that into account in determining how much weight and how much credibility they will give to that particular witnesses's testimony . . ."
Accordingly, even though the trial judge's instruction to reconcile the testimony was in error, any error was sufficiently cured by the additional instructions, so that the error did not rise to the level of plain error.
 V. Jury Instruction on Evidence of Flight
Musgrove and Rogers contend that the trial court improperly instructed the jury that evidence of their flight from police could be used only to conclude that they absented themselves out of a consciousness of guilt of the murder of Coy Barron or that they absented themselves out of an innocent and lawful purpose. They argue that the jury was, therefore, not allowed to consider that their flight was motivated by reasons other than a consciousness of guilt of the murder, such as the fact that both were escapees from prison release programs or that they were riding in a stolen car. In response, the State argues that when the jury instruction at issue is examined in its entirety, and not isolated, one must conclude that the jury was properly instructed to look to all the evidence to determine the motivation for the defendants' flight and was not precluded from finding a motive other than a consciousness of guilt of the murder.
The jury instruction at issue stated:
 "Now, ladies and gentlemen, in the prosecution for a crime it is permissible for the State to offer proof of the flight of the Defendant or Defendants from the location as a circumstance tending to show the guilt of the accused, but where a crime has been committed and proof of flight of the accused is offered or evidence tending to infer that the Defendant or Defendants absent[ed] himself or themselves from the location in which the alleged crime was committed, the probative force or the value of the fact of flight depends entirely upon the purpose of the Defendant or Defendants in their absenting themselves from the locations. The question as to why the defendant or Defendants left the location becomes a question for the jury. And it is for the jury to determine from the evidence of all the surrounding circumstances whether the Defendants absent[ed] himself or themselves from the location and if he did, did he so absent himself or themselves out of a sense of guilt, out of a fear of or to avoid arrest or whether he absented himself from the location for an innocent and lawful purpose disassociated with any idea of the crime for which we are trying today. When I refer to crime, I'm referring to the crime that is charged in these indictments, that being the offense of capital offense [sic] that you will have that is alleged in the indictments plus the lesser included offense of murder under the felony murder doctrine."
(Emphasis added.)
Neither Musgrove nor Rogers objected to this jury charge during trial, and they have not previously raised the issue on appellate review. Accordingly, the issue is reviewable only under the plain error standard. Rule 39(k), A.R.App.P. The State contends that the instruction properly informed *Page 1367 
the jury that it was to consider all the surrounding circumstances in determining a motivation for the defendants' flight and that when a second charge given to the jury is also considered, it is clear that there was no plain error.
This Court concludes that, by itself, the first charge given to the jury regarding the use of evidence of the defendants' flight improperly limited the jury to considering the flight to be either evidence of guilt of the murder of Coy Barron or, in the alternative, evidence of an innocent and lawful flight. Standing alone, this jury charge might rise to the level of plain error. Plain error is "error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings." United Statesv. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied,479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986).
However, as previously noted, in review of a trial court's jury charge, individual instructions are not to be isolated or taken out of context, but must be considered in light of all the other instructions. Ex parte Holifield, 562 So.2d at 255;Alexander, 601 So.2d at 1133. We hold that any error in the first charge on the use of flight evidence was sufficiently cured by a later jury charge, so that there was no plain error.
The second instruction, which had been requested by defense counsel, stated:
 "The flight of a defendant in a criminal case may or may not be considered as a circumstance tending to prove guilt depending on the motive which prompted it, whether a consciousness of guilt and a pending apprehension of being brought to justice caused the flight or whether it was caused from some other motive. And the jury may look to all the surrounding circumstances to determine this fact."
(Emphasis added.) This instruction repeated to the jury the explanation that it could look to all the evidence to determine the motive for the defendants' flight, and it sufficiently cured the impropriety that existed in the earlier charge. Accordingly, we find no plain error.
 VI. The District Attorney's Statements During Closing Argument A.
Musgrove and Rogers argue that, during the State's closing argument to the jury in the guilt phase of the trial, the prosecutor improperly commented on their failure to testify, thereby violating their constitutional rights and depriving them of a fair trial. Article I, § 6, of the Alabama Constitution of 1901 states, in part, that the accused in a criminal prosecution "shall not be compelled to give evidence against himself." This constitutional right is the basis for the requirement that a criminal defendant's failure to testify shall not be commented upon by the prosecution. Ex parteWilson, 571 So.2d 1251, 1261 (Ala. 1990); Whitt v. State,370 So.2d 736, 738 (Ala. 1979). In Alabama, this right is also protected by statute:
 "On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment."
Ala. Code 1975, § 12-21-220.
 B.
Specifically, Musgrove and Rogers contend that the prosecutor's questions, "What did you hear from the defense?" and "What did you hear from the Defendant?" — made during rebuttal closing argument — were improper comments on their failure to testify. Following defense counsel's objections, the trial judge failed to give a curative instruction regarding the district attorney's statements to the jury. The prosecutor continued with the remainder of his closing argument. At a later request for a ruling on the objections, the trial judge indicated that the objections would be overruled, but also taken under advisement. *Page 1368 
The defendants argue that because they properly objected and moved for a new trial based on the prosecutor's statements and because no curative instruction was given to the jury, §12-21-220 requires that they be granted a new trial. For reasons set forth below, we disagree.
 C.
Given another set of circumstances, this Court might find the defendants' argument compelling. Because even indirect comments on an accused's failure to testify have the potential to be highly prejudicial, a prosecutor must be careful not to step over the line and into a violation of the defendant's constitutional rights. Ex parte Williams, 461 So.2d 852, 853
(Ala. 1984); Whitt v. State, 370 So.2d at 739. However, under the particular facts of this case, we find that the prosecutor's statements were not comments on the defendants' failure to testify.
When an accused contends that a prosecutor has made improper comments during a closing argument, the statements at issue must be viewed in the context of the evidence presented in the case and the entire closing argument made to the jury — both defense counsel's and the prosecutor's. Washington v. State,259 Ala. 104, 65 So.2d 704 (1953); Stephens v. State,580 So.2d 11 (Ala.Crim.App. 1990), aff'd, 580 So.2d 26 (Ala. 1991). When the prosecutor's statements are viewed in the proper context, we conclude that they were permissible responses to comments made by the defendants' counsel during closing argument. See Stephens, supra; Merritt v. State,571 So.2d 409 (Ala.Crim.App. 1990).
During closing argument, defense counsel made repeated attacks upon the prosecution's presentation of its case and the prosecution's motivation for obtaining a conviction. For example, defense counsel for Rogers criticized the prosecutors and argued:
 "After October the 1st, 1986, there was a lot of efforts expended in this case, but those efforts were expended to obtain a conviction, not to find out what the facts were or find out what the truth is and there is a big difference, folks.
". . . .
 "No, they made up their minds on October the 1st, 1986, these two men were guilty and after that it didn't matter. The only thing they were interested in was taking a conviction, because look what they did.
". . . .
 ". . . [Y]ou know, something concerns me about this case. When we get prosecutors that start harassing State's witnesses or defense witnesses . . . You think that attitude is the kind of attitude that is interested in the truth or finding out what the facts are or listening to what she had to say about what she knows about this case? I don't think so. . . . They are not interested in the facts or the truth, they are interested in a conviction.
". . . .
 "And they don't know they were over there stealing a car, they want you to speculate these people into the electric chair."
Among the concluding comments in Rogers's closing argument was the following statement:
 "Was there something in those records — I don't know whether they — there may have been nothing, it may have been just like he said, just an employment record, but it got thrown away anyway. It got thrown away, but it is a pattern of conduct, it started from the beginning and it progressed all the way through the trial. A pattern of conduct that we want a conviction regardless of what the facts are or regardless of what the evidence is and that is very sad, folks, it is very sad. I'm not saying that they did it with that in mind, consciously, you know, said the end justifies the means. People say I'm right so therefore what I do[,] although it may not be proper[,] justifies what I'm doing. I may not say that, but it is consciousness like Hitler justified killing 6,000,000 Jews, he obviously thought it was the thing to do. He thought he was protecting the world. Killed 6,000,000 people. The end justifies the means? And there were plenty of examples, that just happened to come to mind. Does the end justify the means *Page 1369 
when we are talking about justice and fairness and people's lives?"
(Emphasis added.)
It was only thereafter, during the prosecution's rebuttal closing argument, that the statements at issue on this review were made. In the first part of that closing argument, the prosecutor discussed at length the evidence presented by the State. Then he outlined the evidence presented by the defense and contested its merit. Finally, the prosecutor began an ending summary of the State's, and then of the defense's, case.
 "[DISTRICT ATTORNEY]: The evidence I state to you in argument, ladies and gentlemen, shows that they are murderers. And there is no honor.
 "Now the case is going to be yours. What did you hear from the defense?
 "[COUNSEL FOR ROGERS]: And I'm going to object on the grounds of both the Alabama Constitution and the U.S. Constitution based on [the district attorney's] comments and respectfully ask for a mistrial.
 "THE COURT: I will have to rule on that at the end of the closing argument.
 "[COUNSEL FOR ROGERS]: Judge, we are asking for a mistrial on his unconstitutional statements [based] on both the Alabama and U.S. Constitution.
 "THE COURT: At this point in time, I will have to take it under advisement.
 "[DISTRICT ATTORNEY]: What did you hear from the Defendant?
 "[COUNSEL FOR ROGERS]: Again, I'm going to object on both the constitution of . . . Alabama and the U.S. Constitution and —
 "[COUNSEL FOR MUSGROVE]: And we would like a continuing objection and —
"[COUNSEL FOR ROGERS]: And ask for a mistrial.
 "THE COURT: I will take it under advisement at this time.
 "[DISTRICT ATTORNEY]: Think about that last question and the answer is what you heard. Adolph Hitler and 6,000,000 Jews. You heard [counsel for Musgrove] talk about the electric chair in his opening statement. Opening statement is supposed to be for the purpose of outlining what you expect the evidence to show. When you hear [counsel for Rogers] talking about the electric chair and Adolph Hitler killing 6,000,000 Jews and that is right after he talked about the State letting the guilty party go free, they are not interested in the truth, just getting a conviction, et cetera, et cetera, et cetera. Folks, he is right, I'm wanting a conviction, I have worked hard for the last year and a half on this case and ask my wife about this, the evidence shows that those men gunned down Coy Barron in his house with his wife and baby standing by."
The Court of Criminal Appeals wrote concerning the second statement at issue:
 "[This comment,] when viewed in the context of the entire argument, did not refer to the appellants' failure to testify, but was rather the prosecutor's opening into a summary of the case presented by the defense. The comment was clearly not a direct reference to the appellants' failure to testify because it was not " 'manifestly intended to be, or was of such a character that the jury would naturally and necessarily take it to be, a comment on the failure of the accused to testify.' " [Citations omitted.] Nor was this comment an indirect reference to the appellants' failure to testify and there was no 'close identification' of the appellants as the exact people who did not become witnesses. [Citation omitted.] This statement by the prosecutor was merely a general opening statement to a recapitulation of the defense's case."
Musgrove and Rogers v. State, 638 So.2d 1347, 1359
(Ala.Crim.App. 1992).
We agree. A prosecutor has the right to point out to the jury that certain parts of the State's evidence have not been contradicted. Ex parte Williams, 461 So.2d at 853; Windsor v.State, 593 So.2d 87, 91 (Ala.Crim.App. 1991). Further, a prosecutor has the right to fairly "reply in kind" to statements made by defense counsel in the defense's closing argument. Davis v. State, 494 So.2d 851 (Ala.Crim.App. 1986). We conclude that, when viewed in the context of the closing arguments of both the defense and *Page 1370 
the State, the statements at issue were not a reference to the defendants' failure to testify, but rather were a reply to the argument made by Rogers's counsel comparing the State's efforts to convict the defendants to the actions of Adolph Hitler in killing millions of Jews. Accordingly, we find no error in the statements that would warrant a reversal of the defendants's convictions.
 VII. Conclusion
We have searched the entire record for any plain error or defect that might have adversely affected the defendants' substantial rights and we have found none. Rule 45A, A.R.App.P. Having considered each of the issues raised by Musgrove and Rogers, we conclude that their convictions and sentences of death are due to be affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] After a thorough and careful review of the record, we hold that the Court of Criminal Appeals correctly decided those issues not further addressed in this opinion.