No. 45,832

STATE OF KANSAS, *Appellee*, v. DALE E. STANPHILL, *Appellant*.

(481 P. 2d 998)

Opinion filed March 6, 1971.

*Martha R. Hodges,* of Wichita, argued the cause, and was on the brief for the appellant.

*David P. Calvert,* deputy county attorney, argued the cause, and *Kent Frizzell,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: The appellant, Dale E. Stanphill, was convicted by a jury of the offense of burglary in the second degree. A motion for new trial was overruled, and Stanphill was sentenced to the state penitentiary for a term of 25 years under the habitual criminal act.

The principal issue on appeal centers on appellant's claim he was not afforded a speedy trial. Other points, including alleged trial errors, are raised and will receive our attention in due course.

On the evening of February 22, 1966, law enforcement officers were summoned to the Wichita Postal Employees Credit Union where they discovered a door to the building had been forced open. On further investigation, the officers found appellant and his companion inside the vault attempting to open a safe, the appellant holding a flashlight while his partner in the nefarious venture applied a pry bar.

Following appellant's arrest, charges were filed in the court of common pleas in Sedgwick county. On March 2, he was released on bond pending a preliminary examination. Appellant journeyed to Kansas City where he was arrested the following day as a parole violator by federal authorities. Thereupon, he was returned to the federal penitentiary at Leavenworth to serve out a prior life sentence to that institution. After corresponding with various law-enforcement agencies, the marshal of the court of common pleas ascertained appellant's whereabouts, and on or about April 18 a detainer was lodged with the penitentiary officials.

On June 4, 1968, appellant field a *pro se* motion in the common pleas court to show cause why the complaint pending against him should not be dismissed with prejudice for lack of speedy trial.

The motion indicated appellant's desire to have his case disposed of in an expeditious manner. No action was taken until January 8, 1969, when the county attorney corresponded with the attorney general of the United States requesting advice about appellant being made available for trial in state court. On February 6, the attorney general informed the county attorney about the procedure to be followed for obtaining custody of appellant. Thereupon, a writ of habeas corpus *ad prosequendam* was issued February 12, and appellant was returned to the Sedgwick county jail February 24.

Following his appearance before the court of common pleas February 25, appellant, with the aid of court-appointed counsel, reasserted his earlier motion to dismiss for lack of speedy trial and the same was overruled. A preliminary hearing was held resulting in appellant being bound over to district court for trial. An information was filed in district court March 18, and the speedy-trial issue was again raised by appropriate motions to dismiss. The motions were denied, and appellant's case proceeded to trial May 26, 1969.

Within this factual framework we must determine whether appellant has been denied his basic right to a speedy trial as guaranteed by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment of the Federal Constitution (*Klopfer v. North Carolina*, 386 U. S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988).

On January 20, 1969, approximately two weeks before the county attorney's inquiry to the attorney general, *Smith v. Hooey*, 393 U. S. 374, 21 L. Ed. 2d 607, 89 S. Ct. 575, was decided. There, the petitioner had been indicted in Texas on a state charge while he was a prisoner in the federal penitentiary at Leavenworth. Despite repeated demands for trial by petitioner extending over a period of nearly eight years, the state made no effort to obtain his appearance in the Texas court. The United States Supreme Court held the constitutional right to speedy trial may not be dispensed with merely because the accused, under a state charge, is serving a prison sentence imposed by another jurisdiction, and upon petitioner's demand, the state has a constitutional duty to make a diligent, good-faith effort to bring him before the trial court. The reasoning of the court appears in the following language:

". . . [T]he fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by

one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him." (p. 611.)

The decision effectively abrogated what has been the settled law of this state. In *Evans v. Mitchell,* 200 Kan. 290, 436 P. 2d 408 (decided January 27, 1968), we held that neither the federal nor state constitutional right to speedy trial is violated where the delay is occasioned by the accused being imprisoned in another jurisdiction. It is now apparent that our holding in *Evans* has ceased to have solid constitutional footing, and henceforth cannot be relied on as the law in this jurisdiction. Thus, an accused's plea for speedy trial in state court can no longer go unheeded merely because he is incarcerated in another jurisdiction.

Appellant acknowledges that inasmuch as he is not a prisoner in "a penal or correctional institution of this state," the Uniform Disposition of Detainers Act (K. S. A. 62-2901 *et seq.*) providing for trial within 180 days after request has no direct application to this case. (*State v. Morton,* 200 Kan. 259, 436 P. 2d 382, cert. denied, 393 U. S. 890, 21 L. Ed. 2d 168, 89 S. Ct. 209.) The argument is made, however, the act provides legislative guidelines that should be adhered to by this court in defining the limits of the speedy-trial right guaranteed by the federal and state constitutions. Thus, since appellant was not brought to trial within 180 days after demand, he was entitled to dismissal of the charges.

Parenthetically, we note that after the events in question, Kansas became a party to the Interstate Agreement On Detainers which contains a similar 180-day provision (K. S. A. 1969 Supp. 62-3001, *et seq.*). It too has no application here.

A constitutional right is not to be limited or denied simply because of the lack of implementing legislation. In a number of cases we have said that the right to speedy trial provided for in our state constitution is legislatively defined by the various statutes enacted to supplement the general language of the Constitution and render the constitutional guarantee effective. For example, the Uniform Mandatory Disposition of Detainers Act was founded on legislative policy, as distinguished from constitutional grounds. Such legislation was designed not to protect the convict's right to speedy trial

*per se*, but rather to protect him from the particular disabilities engendered by an untried detainer pending against him while he is serving a prison term. (*State v. Goetz*, 187 Kan. 117, 353 P. 2d 816; *Evans v. Mitchell*, supra.) The same policy considerations undoubtedly led to the recent enactment of the Interstate Agreement On Detainers.

While the passage of the statutory period established in these legislative enactments must be treated as conclusive of undue delay if all other conditions are met, the constitutional right must be preserved and kept distinct in those situations not specifically covered by statute. Judge Skelly Wright, in his concurring opinion in *Nickens v. United States*, 323 F. 2d 808 (D. C. Cir. 1963), referred to delay in the criminal process before the filing of charges and said:

"The legislature is free to implement the constitutional right and to provide protections greater than the constitutional right. But the minimum right of the accused to speedy trial is preserved by the command of the Sixth Amendment, whatever the terms of the statute. And that minimum right is measured by a flexible standard which takes account of all the circumstances." (p. 813.)

We must reject appellant's suggestion that the 180-day provision of the Uniform Mandatory Disposition of Detainers Act should be adopted as an arbitrary standard for determining whether his right to a speedy trial was violated. The constitutional duty imposed by *Hooey* requires the state, upon demand by the accused, to make a diligent, good-faith effort to bring him to trial without unreasonable delay. Whether that duty has been fulfilled must be gauged by all the surrounding facts and circumstances in the particular case. Even then, the accused's rights are not violated unless he can show prejudice resulted from an unreasonable delay by the state after trial was demanded.

Just last month we had occasion to examine *Hooey* in *State v. Brooks*, (No. 45,853) 206 Kan. 418, 479 P. 2d 893, and made the following observations:

". . . [T]he court gave little practical guidance for effectuating the right [to speedy trial] or for determining when the right has been violated. We do not find that it changed any of the rules announced in *Fleming v. United States*, 378 F. 2d 502, where the United States Circuit Court of Appeals, First Circuit, stated:

"'As to defendant's additional contention that the post-indictment delay violated his Sixth Amendment right to a speedy trial, as well as the 'unnecessary delay' clause of Rule 48 (*b*) which enforces this right, we point out that this delay was also very short—eleven months. Further-

more, 'the right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances.' United States v. Elwell, supra, 383 U. S. at 120, 86 S. Ct. at 776. Consequently, the showing of a mere lapse of time is not enough to establish denial of a speedy trial. As indicated above, it is essential that defendant also show prejudice or that the delay was improperly motivated.' (p. 504.)

"It would also appear from the above cases that a request is necessary before defendant can complain of failure to grant a speedy trial under the federal rule." (p. 419.)

After the filing of appellant's brief, the United States Supreme Court rendered its decision in *Dickey v. Florida*, 398 U. S. 30, 26 L. Ed. 2d 26, 90 S. Ct. 1564. The court noted that the *Hooey* case had been remanded to the state court without deciding whether the defendant, when available for trial in the state court, would be required to show prejudice arising from the delay. But, with reference to the delay of more than seven years occurring in *Dickey*, the court said:

"In addition to exerting every effort to require the State to try him, there is present in this record abundant evidence of actual prejudice to petitioner in the death of two potential witnesses, unavailability of another, and the loss of police records. This is sufficient to make a remand on that issue unnecessary. We therefore reverse and remand to the District Court of Appeal of Florida, First District, with directions to vacate the judgment appealed from and discharge the petitioner from custody." (p. 32.)

An examination of the record before us discloses approximately seven months after appellant's request for dismissal of the charges, the county attorney took action to bring him before the state court. These first steps were taken despite the fact that our existing case law imposed no duty upon prosecuting officials to obtain custody of an accused imprisoned in a federal penitentiary. (*Evans v. Mitchell,* supra.) Altogether, a total of eight and one half months elapsed before the state actually obtained custody of appellant. In the interim, *Smith v. Hooey,* supra, was decided. In disposing of this case, the question of whether or not *Hooey* was intended to have retroactive application need not be decided. We are satisfied that even under the constitutional duty imposed by that decision, appellant's right to a speedy trial was not violated. The state's good faith has not been challenged. While a substantial delay on the part of the prosecution cannot now be condoned under present law, we are unable to say the delay here, in and of itself, constitutes a violation of the constitutional duty imposed on the state. Especially

is this true where appellant has not shown his substantial rights were prejudiced. We have only his bald assertion that his ability to defend himself was impaired because he had lost contact with friends and had lost any source of funds with which he might have hired counsel. Unlike in *Dickey*, these allegations were not substantiated by evidence, nor do they necessarily constitute actual prejudice. The trial court's determination that appellant's right to a speedy trial was not violated must be sustained.

Appellant also complains the trial court erred in overruling his motion to quash and discharge the jury panel, more properly termed a challenge to the array. The same two-pronged attack leveled against the venire in the lower court is urged on appeal.

In the first place, defendant contends the jury selection officials failed to ascertain whether persons selected as prospective jurors from the personal property tax rolls met the statutory qualifications set forth in K. S. A. 43-102.

K. S. A. 43-102 provides in part that officials shall select from those on the assessment roll of the preceding year suitable persons having the qualifications of electors, and in making such selection they shall choose only those who are not exempt from serving on juries, and who are possessed of fair character and approved integrity, and in possession of their natural faculties, and not infirm or decrepit, and who are well-informed and free from legal exceptions.

The Kansas constitution defines a "qualified elector" as any citizen of the United States of the age of twenty-one years and upwards who shall have resided in Kansas six months next preceding an election. (Kan. Const. art. 5, § 1.)

The statutory procedure for the drawing and summoning of jurors in Sedgwick county is set forth in K. S. A. 43-154. Under the terms of the statute, selection process begins with the personal property assessment rolls.

In support of his challenge to the array, appellant presented the testimony of the election commissioner, the chief deputy in the clerk of the district court's office, a court reporter (jury clerk), and the county assessor. Their testimony tended to establish that no check was made by any of the officials with respect to the age or citizenship of persons listed on the tax rolls or whether such persons were "registered voters."

With reference to what is now K. S. A. 43-102, this court has said the statute is directory, and a defendant may not cause the

jury panel to be quashed on any ground which does not involve corruption, serious misconduct or palpable disregard of the law. Informalities and irregularities are not sufficient. (*State v. Carter,* 133 Kan. 718, 3 P. 2d 487. Also, see *State v. Snyder,* 126 Kan. 582, 270 Pac. 590; *State v. Frazier,* 54 Kan. 719, 39 Pac. 819; *State v. Jenkins,* 32 Kan. 477, 4 Pac. 809.)

In *State v. Frazier,* supra, the names of the jurors placed on the list were taken from the assessment rolls for the year 1883, when they should have been taken from the rolls of 1882, and it was held that a challenge to the array should have been sustained because the law had been disregarded. The situation here is clearly distinguishable, for the sole objection is that the method of selection *may* have resulted in the listing of jurors not qualified under the law. We deem the method employed led to no more than an irregularity in the selection process, and did not constitute a valid ground for a challenge to the array. For that matter, the record is void of any showing appellant was prejudiced or was deprived of a fair and impartial jury simply because the officials did not ascertain whether or not the prospective jurors possessed the qualifications set forth in K. S. A. 43-102. (See, *State v. Clift,* 202 Kan. 512, 449 P. 2d 1006, cert. denied, 396 U. S. 910, 24 L. Ed. 2d 186, 90 S. Ct. 225.)

Furthermore, the record contains none of the proceedings relating to the *voir dire* examination or the actual impaneling of the jury. So far as we know, appellant did not take advantage of the opportunity available and challenge individually any jurors who were not qualified, if, in fact, there were any. In the absence of any showing to the contrary, we must presume that the jurors selected to try the case possessed the requisite qualifications. The main purpose of *voir dire* examination is to afford counsel the opportunity to question prospective jurors concerning their qualifications. (K. S. A. 60-247 [a].) If it develops a juror does not possess the qualifications required by the laws of this state, he is subject to challenge for cause. (K. S. A. 43-141.) When some of the jurors are not qualified, but the entire panel is not affected, a motion to quash the entire panel will not lie. The court may simply purge the panel by discharging those individuals not qualified. (See *State v. Carter,* supra.)

The second ground of appellant's challenge is that the mode of selecting jurors in Sedgwick county under K. S. A. 43-154 results

in the systematic exclusion of women. This comes about because personal property owned by married persons will sometimes be listed on the assessment sheets in only the husband's name, or if listed in both names, the man's name is often listed first. Consequently, when name slips for prospective jurors are made up from the assessment sheets, the names of qualified women taxpayers are frequently omitted. To further buttress his argument, appellant contends that approximately one half of the electors in Sedgwick county are women, and a spot check of jury lists for June and July 1969 disclosed only seventeen percent of the names thereon were those of women. Accepting these statistics as true, we do not believe they support appellant's conclusion that there was deliberate, purposeful exclusion of women from jury duty.

Systematic or purposeful exclusion of members of a class from jury service may not be assumed or asserted—it must be established by proof. (See, *State v. Clift*, supra.) Just as in the case of alleged discrimination based on race, purposeful exclusion is not satisfactorily proved by showing an identifiable segment of the community is not proportionately represented on the jury list. (*State v. Cushinberry*, 204 Kan. 65, 460 P. 2d 626.) In *Swain v. Alabama*, 380 U. S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, it was stated:

"But a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. [Cases cited.] Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group." (p. 766.)

The statistics set forth by appellant clearly reveal that the selection method employed in Sedgwick county did not result in *all* women being excluded from the jury list, nor was there any indication that only a token number were included. A disproportionate number of women to men on a jury list does not have any constitutional significance. (*Hoyt v. Florida*, 368 U. S. 57, 7 L. Ed. 2d 118, 82 S. Ct. 159.) From this record we can only conclude that there has been a complete failure of proof to the effect that the action of the jury selection officials resulted in invidious discrimination against members of the fairer sex.

Turning to the instructions, we find objections were lodged by appellant to at least two of the instructions which stated the essential elements of the offense in the language of the statute.

(K. S. A. 21-520.) The statute requires the breaking and entering to be with the intent "to steal *or* commit any felony therein." The complaint is made that the instructions were not responsive to the allegations of the information which charged appellant with breaking and entering the building in question with the intent "to commit a larceny *and* felony therein." Appellant's argument goes more to the sufficiency of the information than to the adequacy of the instructions. At any rate, we believe it is utterly without merit.

The law requires that the jury be instructed concerning the essential elements of the offense. This may be accomplished by substantially following the wording of the statute, just as was done in this case. Under the evidence, the jury needed only to determine that there was a breaking and entering with the intent *to steal*. Whether there was an intent to commit any other felony was immaterial. The sufficiency of the information was not timely challenged by a motion to quash, and under the circumstances, the words "and felony" may be disregarded as mere surplusage. For purposes of charging an offense under the statute, the significant averment was the phrase "to commit a larceny." The phrases "to commit a larceny" and "to steal" are, for all practical purposes, synonymous in meaning. We are satisfied the jury was not misled and was correctly instructed as to the law of the case.

Likewise, the trial court properly refused appellant's request for an instruction on attempted burglary. An attempt to commit a crime, by its very definition, arises when the accused has failed to consummate the commission of the offense. (K. S. A. 21-101.) The evidence in this case did not warrant such an instruction, for it clearly established all the elements of the completed offense. Contrary to appellant's suggestion, the crime had been fully perpetrated, despite the fact he and his companion were interrupted before they were able to remove any property from the premises.

We have also considered three additional points raised by appellant in his brief. They do not merit extended discussion. It suffices to say that appellant, having had three prior felony convictions, was properly sentenced under the habitual criminal act (K. S. A. 21-107a). He was afforded adequate notice that the provisions of the act were to be invoked and was given the opportunity for a full and complete hearing thereon. (*Brown v. State*, 198 Kan. 345, 424 P. 2d 576; *State v. Stubbs*, 195 Kan. 396, 407 P. 2d 215.) The sentence of 25 years was authorized by K. S. A. 21-107a and 21-109.

The transcript of proceedings and the journal entry of judgment were sufficiently certain to indicate that the trial court intended the sentence imposed was to run consecutively to the sentence appellant was serving in the federal penitentiary.

The judgment is affirmed.