NOT DESIGNATED FOR PUBLICATION

No. 122,205

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ORION M. SHERLEY,
*Appellant.*

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed December 4, 2020. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Todd G. Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Orion M. Sherley, a prison inmate who was serving time for convictions out of Wyandotte County, sought resolution pursuant to the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq., of pending charges in Leavenworth County for fleeing or attempting to elude a law enforcement officer and speeding. Sherley was brought before the district court to answer the charges, and, on the eve of trial, he sought their dismissal on the grounds he had not been brought to trial on or before 180 days as required by UMDDA. The district court rejected this argument, holding that because some of the delay in bringing Sherley to trial was attributable to him, the UMDDA's 180-day time limit had not been violated. A jury

1

subsequently convicted Sherley on both charges. Sherley now appeals the district court's refusal to dismiss his case on UMDDA speedy trial grounds. He also claims insufficient evidence supports his speeding conviction. After a careful review of the record, we disagree with Sherley and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 2015, around 4 p.m., Kansas Highway Patrol Master Trooper Joshua Reischman was off duty and traveling eastbound on US Highway 24 between Kansas Highway 7 and 142nd Street. While driving, just as he entered Wyandotte County, Kansas, he saw a westbound vehicle entering Leavenworth County just east of K-7 traveling at what he estimated to be at least 100 miles per hour in a 50-miles-per-hour speed zone. Reischman identified the vehicle to be a small, dark colored Toyota SUV and the driver as a white male with a short, buzzed haircut and a white shirt.

Between 4 and 4:30 p.m. that same day, on-duty Tonganoxie Police Officer Anthony Schuberger was told by Leavenworth County dispatch the dark SUV was westbound on 24/40 Highway and coming into Tonganoxie. Schuberger saw the vehicle near Laming Road traveling eastbound on 24/40 Highway and eventually identified it as a black Toyota 4Runner, entering the city at "extreme speeds." Schuberger activated his lights and sirens and turned around to pursue the vehicle. He testified he had to accelerate to 120 miles per hour to catch up to the vehicle and continue traveling in excess of 100 miles per hour to maintain his pursuit. The SUV actively passed other vehicles by going into opposing traffic and ran a few vehicles off the roadway. Schuberger's body cam footage was admitted at trial and played for the jury, and at the 45 second mark a 65-miles-per-hour speed limit sign is visible. During the chase, Schuberger also relayed the vehicle's speed to dispatch, which is heard in the body cam video.

Schuberger continued his pursuit into Douglas County, and the vehicle turned off onto K-59 toward Lawrence, almost losing control and at one point going up onto only two wheels, while still traveling in excess of 100 miles per hour. Schuberger followed the vehicle into the city of Lawrence and briefly lost sight of the SUV. A Lawrence Police Department officer, who had just deployed stop sticks on the vehicle, gestured that the vehicle went west on 6th Street. Because of the stop sticks, the vehicle's tires deflated, the SUV came to a stop at 6th and Michigan, and the occupants fled.

Ultimately, the officers found Sherley hiding in a closet in a nearby building and arrested him. After being advised of his rights, Sherley agreed to speak with the officers, and he told them he was in the SUV involved in the pursuit but claimed he was not the driver. The two other persons who also fled from the vehicle were apprehended by other officers. Sherley was subsequently charged with fleeing or attempting to elude a law enforcement officer and speeding.

While serving time in prison on other charges from Wyandotte County, Sherley filed a request pursuant to UMDAA that he be brought to trial on the charges pending against him in Leavenworth County stemming from the above events. On the eve of trial, the district court denied Sherley's motion to dismiss and motion to reconsider, both arguing his speedy trial rights under UMDDA had been violated. After a trial, the jury ultimately found Sherley guilty of one count of fleeing or attempting to elude a police officer and one count of speeding in excess of 100 miles per hour in a posted 65-miles-per-hour zone. The district court sentenced Sherley to 16 months' imprisonment for the fleeing or attempting to elude a police officer conviction and a $378 fine for the traffic infraction.

Sherley timely appeals.

3

I.      DID THE DISTRICT COURT ERR IN DENYING SHERLEY'S MOTIONS TO DISMISS AND RECONSIDER BASED ON UMDDA?

Sherley first argues the district court erred in denying his motion to dismiss and his motion to reconsider, both based on UMDDA, because he was brought to trial outside of the statutorily mandated 180 days. Specifically, he argues that 188 days passed between the filing of his motion under UMDDA and his trial. In response, the State argues only 173 countable days passed because of Sherley's acquiescence to some delays.

Whether a defendant's statutory right to a speedy trial was violated is a legal question subject to unlimited review. To resolve Sherley's speedy trial question, we must interpret and apply UMDDA, which are also legal questions subject to our unlimited review. See *State v. Burnett*, 297 Kan. 447, 451, 301 P.3d 698 (2013).

UMDDA allows persons imprisoned in Kansas to request final disposition of other Kansas charges pending against them. Its purpose is to prevent imprisoned persons from having their other charges suspended indefinitely while they serve the remainder of their sentence by obligating the district court to hear their charges within a reasonable timeframe. 297 Kan. at 452-53. UMDDA was founded on this legislative policy rather than on constitutional grounds. See *State v. Stanphill*, 206 Kan. 612, 616, 481 P.2d 998 (1971).

A prisoner must substantially comply with UMDDA's provisions to obtain his or her speedy trial right. *Burnett*, 297 Kan. at 453. This includes preparing a written request for disposition of detainer and addressing it to the secretary of corrections, as well as the county attorney and the district court where the charge is pending. K.S.A. 2019 Supp. 22-4301(a). Once the prisoner's request for final disposition is received, the State's failure to bring the charge to trial within 180 days deprives the district court of jurisdiction, subject to certain statutory exceptions. See K.S.A. 2019 Supp. 22-4303(b).

"Under K.S.A. 22-4303, if all other conditions are met, the passage of the 180-day statutory period must be treated as conclusive of undue delay unless: (1) the court for good cause in open court grants additional time; (2) the parties stipulate to a continuance; or (3) a continuance is granted on notice to the attorney of record and opportunity to be heard." *Burnett*, 297 Kan. at 458.

The State does not dispute that Sherley properly invoked his speedy trial right under UMDDA. Both parties accept April 19, 2018—the date the district court filed Sherley's request for final disposition—as the date the speedy trial clock began to run. See 297 Kan. at 459 (finding 180-day deadline triggered when district court filed prisoner's request). Strictly counting the days between the filing of Sherley's UMDDA motion and the filing of his motion to dismiss based on a violation of UMDDA, 201 days passed. See *State v. Woods*, No. 117,294, 2018 WL 1770556, at *4 (Kan. App. 2018) (unpublished opinion) (speedy trial clock stops running when defendant files motion to dismiss on speedy trial grounds to allow for resolution of that motion). This calculation is obviously over the 180-day limit set forth in UMDDA and is conclusive of undue delay unless "(1) the court for good cause in open court grant[ed] additional time; (2) the parties stipulate[d] to a continuance; or (3) a continuance [was] granted on notice to the attorney of record and opportunity to be heard." *Burnett*, 297 Kan. at 458.

Sherley filed a motion to dismiss the charges against him, arguing the district court lacked jurisdiction because he had not been brought to trial within 180 days of his request for the disposition of his detainer. The district court denied this motion, holding that Sherley's acquiescence to a trial date after the expiration of the 180-day UMDDA speedy trial limit did not count against the State.

For reasons which are unimportant to this appeal, Sherley was eventually appointed new counsel, and that counsel asked the district court to reconsider its denial of Sherley's motion to dismiss. Counsel argued the district court relied on the wrong date for Sherley's stipulation to a later trial date. Counsel's motion asserted that the district court

originally improperly designated October 5, 2018, as the date of stipulation, when the stipulation actually occurred on October 26, 2018. The district court took the matter under advisement and ultimately denied the motion. The district court agreed that while October 26, 2018, was the correct date of the stipulation to the trial date and the original journal entry denying Sherley's motion to dismiss contained an error in that regard, the motion was still properly denied because Sherley acquiesced to the setting of the dates for the pretrial conference and the trial. The district court concluded only 168 days were attributable to the State.

A chart of the relevant dates is helpful for our analysis:

| Event | Date | Total Days Lapsed | Days Attributed to State | Days Attributed to Sherley |
|---|---|---|---|---|
| UMDDA motion filed requesting disposition of detainer | April 19, 2018 | — | — | — |
| First appearance (not held due to judge's retirement and scheduled jury trial) | June 29, 2018 | 71 | 71 | 0 |
| Rescheduled first appearance (not held because Sherley was not transported due to his "special management" prisoner designation) | July 27, 2018 | 28 | 28 | 0 |
| Second rescheduled first appearance (held) | August 10, 2018 | 14 | 14 | 0 |
| Preliminary hearing (continued for "good cause shown" because Sherley was again not transported due to his "special management" prisoner designation) | August 31, 2018 | 21 | 21 | 0 |
| Continued preliminary hearing & status conference (held) | September 7, 2018 | 7 | 0 | 7 |
| Preliminary hearing (held; district court finds probable cause; arraignment scheduled) | September 19, 2018 | 12 | 12 | 0 |

6

| | | | | |
|---|---|---|---|---|
| Arraignment<br><br>(held; Sherley enters plea of not guilty; court offers two dates for pretrial conference; Sherley's counsel selects the later date) | October 5, 2018 | 16 | 16 | 0 |
| Pretrial conference<br><br>(held; jury trial scheduled for November 26, 2018) | October 26, 2018 | 21 | 0 | 21 |
| Motion to dismiss based on UMDAA filed | November 6, 2018 | 11 | 11 | 0 |
| | Totals: | 201 | 173 | 28 |

The chart indicates that of the 201 days between the filing of the request for disposition of Sherley's detainer and the filing of his motion to dismiss on speedy trial grounds under UMDDA, 173 days are attributable to the State and 28 days are attributable to Sherley.

First, the seven days between August 31 and September 7, 2018, are attributable to Sherley because the district court found "good cause shown" for the continuance as Sherley was not transported due to his "special management" prisoner designation. This designation prevented him from being transported with other inmates. Sherley's counsel was present and did not object to the seven-day continuance. See K.S.A. 2019 Supp. 22-4303(b)(1)(C); *Burnett*, 297 Kan. at 458. However, even if we counted those days as attributable to the State, the outcome does not change because, as we explain below, the 21-day delay is attributable to Sherley, which means he was brought to trial within UMDDA's time limit.

Second, the 21 days from October 5 to October 26, 2018, are attributable to Sherley because Sherley's counsel requested the October 26 date for the pretrial conference even though he was offered an earlier date. This conclusion flows from the Kansas Supreme Court's decision in *State v. Brownlee*, 302 Kan. 491, 354 P.3d 525 (2015). To show acquiescence in the speedy trial context, the State must prove "'more

than mere passive acceptance and must produce some evidence of agreement to the delay by the defendant or defense counsel. The record must support a conclusion that the defendant expressly or impliedly agreed to the delay.' 288 Kan. at 145." *Brownlee*, 302 Kan. at 507. Defense counsel's actions and acquiescence are attributable to the defendant for purposes of the defendant's statutory speedy trial rights. See *State v. Bloom*, 273 Kan. 291, 310, 44 P.3d 305 (2002). Here, Sherley's counsel did not passively accept the later date—he intentionally requested it, making any delay chargeable to Sherley.

This calculation that Sherley is not entitled to relief is in spite of the fact the district court made a few errors in reaching the same conclusion. First, the district court initially set the incorrect date of Sherley's purported stipulation to the trial date. The district court found that Sherley stipulated to the trial date on October 5, 2018, when in fact the trial date was not set until the October 26, 2018 hearing. Second, the district court incorrectly concluded that Sherley's UMDDA speedy trial rights were not violated because he acquiesced to the trial date. This purported acquiescence to the trial date is not enough to waive Sherley's speedy trial rights. "The State bears the responsibility for ensuring that the accused is provided with a speedy trial in accordance with K.S.A. 2006 Supp. 22-3402. The defendant is not required to take any affirmative action to ensure that his or her right to a speedy trial is observed." *State v. Adams*, 283 Kan. 365, Syl. ¶ 2, 153 P.3d 512 (2007). In *Adams*, the defendant's trial was initially set within the statutory speedy trial period but was continued several times not due to the fault of the defendant. At the hearing on the last continuance, the district court suggested a trial date outside of the statutory speedy trial period, and defense counsel indicated he was available for that date. On the trial date, the defendant moved to dismiss the case under a violation of his speedy trial rights, which the district court denied. The Kansas Supreme Court held that the trial violated the defendant's speedy trial rights under K.S.A. 2006 Supp. 22-3402 and rejected the State's argument that defense counsel's agreement to the later trial date was an acquiescence or waiver. 283 Kan. at 369-70.

The situation here is different than *Adams*. Although the district court held that Sherley acquiesced to the trial date and waived his speedy trial rights, Sherley's counsel in fact did not merely acquiesce in a new trial date. The delay from October 5 to October 26, 2018, was due to Sherley's counsel's *active request* for a later hearing date. Thus, although the district court's rationale was incorrect, its decision to deny Sherley's motions to dismiss will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015).

Of the 201 elapsed days, at a very minimum 21 of those days were chargeable to Sherley. Under these calculations, there was not a speedy trial violation under UMDDA for the dates of which Sherley complains because the State's delay did not exceed 180 days. The 173 days chargeable to the State, or at most 180 days, elapsed between the initial UMDDA motion and Sherley's filing of his motion to dismiss, which tolls the speedy trial clock. The district court correctly denied Sherley's motion to dismiss and motion for reconsideration.

II.    WAS SHERLEY'S SPEEDING CONVICTION SUPPORTED BY SUFFICIENT EVIDENCE?

Second, Sherley argues insufficient evidence supported his speeding conviction. Specifically, he argues there was no evidence presented during testimony that the speed limit was 65 miles per hour.

Our standard of review for this issue is well known:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence,

9

resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

A fact can be proven by either direct or circumstantial evidence. Direct evidence is "'[e]vidence in form of testimony from a witness who actually saw, heard or touched the subject of questioning. Evidence, which if believed, proves existence of fact in issue without inference or presumption. [Citations omitted.]'" *State v. Evans*, 275 Kan. 95, 105, 62 P.3d 220 (2003). Direct evidence can be proven to the jury in many ways, including witness testimony and video. See *State v. Ward*, 292 Kan. 541, 549, 256 P.3d 801 (2011) (listing examples of direct evidence), *cert. denied* 565 U.S. 1221 (2012).

On appeal, Sherley argues the State presented "absolutely no evidence" of the speed limit during law enforcement's pursuit. We are unpersuaded. A review of Schuberger's body cam footage, which was played for the jury, clearly shows a 65-miles-per-hour speed limit sign posted. Additionally, Schuberger testified the chase at times was upwards of 120 miles per hour and most of the chase was in excess of 100 miles per hour. Moreover, during the chase, Schuberger also relayed the vehicle's speed to dispatch, which is heard in the body cam video. The body cam footage showing the speed limit sign, Schuberger's statements to dispatch regarding the vehicle's speed, and Schuberger's testimony are sufficient evidence to support Sherley's speeding conviction.

Affirmed.