NOT DESIGNATED FOR PUBLICATION

No. 122,031

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DANIEL OSBORNE EATON JR.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed December 18, 2020. Affirmed.

*Todd G. Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before HILL, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: The State appeals from the district court's dismissal of the charges filed against Daniel Eaton Jr. in this action. In particular, the State argues that Eaton failed to follow the requirements of the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq. In addition, the State argues that even if sufficient notice was provided under the UMDDA, the district court improperly calculated the time in making its speedy trial determination. Based on our review of the record, we conclude that Eaton substantially complied with the UMDDA and that the district court lost jurisdiction due to the State's failure to prosecute the charges filed against Eaton within the statutory 180-day time limit. Thus, we affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

The facts material to this appeal are largely uncontested. On June 2, 2016, Eaton was booked into the Wyandotte County Jail on charges in an unrelated case. The following day, the Leavenworth County Attorney filed charges against Eaton in this case. Several months later, on October 21, 2016, the Wyandotte County District Court found Eaton to be guilty on the unrelated charges and sentenced him to the custody of the Kansas Department of Corrections (KDOC). However, Eaton remained in the custody of the Wyandotte County Jail until November 3, 2016.

On October 26, 2016, while still held in the Wyandotte County Jail, Eaton filled out a UMDDA application form in which he stated that he had been sentenced to the custody of KDOC but was awaiting transfer to a state facility. The form stated that that the application was made in compliance with the UMDDA, and Eaton requested that "my detainer be dropped or that I may be taken from this institution to stand trial." In addition, Eaton set forth the case number, the filing date, and the charges pending in the Leavenworth County District Court. Eaton signed the completed form, and Michelle A. Dudgeon notarized his signature.

When Eaton filled out the UMDDA application, Dudgeon was a Program Assistant with the Wyandotte County Sheriff's Office, which operates the Wyandotte County Jail. According to Eaton, Dudgeon provided him with the application form and either she—or someone else in the sheriff's office—mailed it for him after he completed it. Regardless, the record reflects that the completed UMDDA application was mailed to the Leavenworth County District Court in a Wyandotte County Sheriff's Office envelope. Moreover, someone wrote Eaton's name and inmate number on the envelope above the return address.

On November 3, 2016, the Leavenworth County District Court received the UMDDA application. A few days later, on November 7, 2016, the Clerk of the Leavenworth County District Court forwarded copies of Eaton's UMDDA application to both the Leavenworth County Attorney as well as to the district court judge assigned to this case. As discussed further below, the county attorney candidly admits that his office received actual notice of Eaton's UMDDA application at that time.

After receiving notice of the UMDAA application, the district court appointed an attorney to represent Eaton. On February 7, 2017, Eaton's attorney moved to continue the preliminary hearing. The next day, Eaton's attorney informed the district court that he had not been able to speak to his client because he was being held at KDOC's Reception and Diagnostic Unit (RDU). After several more delays, the district court rescheduled the preliminary hearing for April 19, 2017. However, the KDOC failed to transport Eaton to the courthouse and the district court, once again, rescheduled the hearing.

On May 19, 2017, the district court held a preliminary hearing. At the hearing, Eaton was arraigned; and he entered not guilty pleas. The district court scheduled a jury trial to commence on September 25, 2017. However, on June 19, 2017, Eaton filed a pro se motion to dismiss the charges filed against him based on the State's failure to proceed to trial within the 180 days required by the UMDDA.

On September 18, 2017, a week before the scheduled trial, Eaton's counsel filed a motion to continue the trial. At a hearing held two days later, the attorney appeared without Eaton and advised the district court that he had not been able to prepare for Eaton's trial due to other pending cases. As a result, the district court continued the jury trial and set the matter for a status conference.

Eaton requested new counsel and also requested a ruling on his pro se motion to dismiss under the UMDDA on September 27, 2017. The district court informed Eaton

3

that it would not consider his pro se motion while he was represented by counsel. Rather than proceeding pro se, Eaton elected to have another attorney appointed to represent him in this matter. At the conclusion of the hearing, the district court told Eaton that the time until the next hearing would be charged to him.

A few days after the status conference, the district court appointed another attorney to represent Eaton. The district court scheduled another status hearing for November 1, 2017; however, Eaton did not appear because no order of transport had been prepared. A week later, the attorney appeared without Eaton and indicated that he had only been able to speak to his client that morning. Eaton's attorney also requested additional time to investigate the case before setting a jury trial date. Accordingly, the district court scheduled another hearing to be held on December 8, 2017, and indicated that the time would be charged to Eaton.

At the December 8th hearing, Eaton's attorney once again requested additional time. As such, the district court set the case for a jury trial to begin on March 12, 2018. However, on February 20, 2018, just a few weeks before the scheduled trial, Eaton's attorney moved to continue the trial because he had another jury trial scheduled on the same day. On March 9, 2018, the district court granted the continuance and, again, rescheduled the trial date for July 9, 2018.

On June 5, 2018, Eaton once again filed a pro se motion requesting that new counsel be appointed. In addition, Eaton, again, moved for dismissal of the charges under the UMDDA. Eaton argued that his attorney had not had any conversation with him regarding his defense or any other matter pertinent to his case. Furthermore, Eaton pointed out that he had filed a UMDDA application in November 2016 and renewed his request for dismissal of the pending charges. Specifically, Eaton asserted that "this court should no longer have jurisdiction to prosecute the defendant in this case . . . according to the rules under UMDDA."

4

On July 3, 2018, less than a week before the rescheduled jury trial, Eaton's attorney moved to withdraw. In support of the motion, the attorney cited Eaton's motion and explained that he was not prepared for the trial. On July 9, 2018, the district court granted the attorney's motion to withdraw. In doing so, the district court noted that it would not rule on Eaton's second motion to dismiss until another attorney had been appointed. A few days later, the district court appointed a third attorney to represent Eaton. Evidently, that attorney was not able to represent Eaton and a fourth attorney was appointed on July 26, 2018.

Eaton did not appear at a status hearing on August 15, 2018 because KDOC had not transported him to the courthouse. So, the district court rescheduled the status hearing for August 27, 2018. However, that hearing was also continued until September 28, 2018. On that date, Eaton and his attorney requested a hearing date on the second pro se motion to dismiss. In addition, because Eaton was being paroled from KDOC custody that same day, the district court ordered him to be detained on a bench warrant and set conditions for pretrial release. On October 2, 2018, Eaton was released on bond.

On October 11, 2018, Eaton's attorney filed a third motion to dismiss that incorporated in the arguments regarding the UMDDA previously raised in Eaton's pro se motions. The district court conducted another pretrial conference on November 9, 2018, and set the case for a jury trial to begin on January 7, 2019. In the meantime, on December 7, 2018, the district court heard arguments on Eaton's motion to dismiss and took the matter under advisement.

In a Memorandum Decision and Journal Entry entered on January 3, 2019, the district court granted the motion to dismiss and dismissed this case. In so ruling, the district court noted that "the parties agree that the speedy trial limits found in K.S.A. 22-4303 began to run" on November 3, 2016. While we cannot find a transcript wherein the parties expressed their agreement, the State acknowledged the November 3, 2016 start

5

date in both its brief and in its response to the motion to dismiss before the district court. Then, the district court found that 578 days had elapsed between November 3, 2016, and June 5, 2018, when Eaton filed his second motion to dismiss. Likewise, the district court found that 343 of these days were attributable to Eaton. The district court did not explain either of its date calculations in its order.

Displeased with the district court's decision, the State filed a motion to reconsider the following day. In the motion, the State disputed the district court's time calculation. At a hearing held on January 11, 2019, the district court heard argument on the motion to reconsider and took the matter under advisement. While the motion to reconsider was still pending, the State moved to deny dismissal based on the UMMDA.

On June 27, 2019, the district court held a hearing on the State's motions. Initially, the district court granted the State's motions due to improper service. However, the district court reversed course following Eaton's testimony that he did not personally mail the UMDDA application. Consequently, the district court scheduled another hearing on August 14, 2019, allowing Eaton an opportunity to establish whether someone at the Wyandotte County Jail mailed the application for him.

At this hearing, Eaton testified that, after he was placed in KDOC custody but still being held in the Wyandotte County Jail, he requested and received the UMDDA paperwork from Dudgeon. According to Eaton, he followed her instructions for completing the application form and returned it to her with the assumption that she would mail it to the proper location. Eaton also testified that he did not address the envelope. In addition, the State conceded at the hearing that the Leavenworth County Attorney's Office had received actual notice of Eaton's UMDDA application in November 2016.

On August 20, 2019, the district court reiterated its earlier ruling in which it denied the State's motions. In particular, the district court found it significant that the

6

county attorney's office had actual notice of Eaton's UMDDA application since November 2016. The district court again found that the case should be dismissed based on the UMDDA. Thereafter, the State timely filed a notice of appeal.

ANALYSIS

On appeal, the State contends that the district court erred in dismissing the charges against Eaton. The State argues that Eaton failed to comply with the notice provisions of the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq. In addition, the State argues that the district court improperly calculated the time elapsed under the UMDDA. In response, Eaton argues that he substantially complied with the UMDDA requirements to place the State on notice that the 180-day time limit had begun to run. Likewise, Eaton argues that the district court properly calculated the time to be charged to the State. Accordingly, Eaton also argues that the district court appropriately concluded that it lost jurisdiction to pursue the charges against him because the State did not bring him to trial within 180 days, as required by the UMDDA.

The UMDDA provides a process for prisoners in the custody of KDOC to request final disposition of criminal charges pending within the State of Kansas. *State v. Burnett*, 297 Kan. 447, 448, 301 P.3d 698 (2013). Once a prisoner properly gives notice under the UMMDA, the State must commence trial within 180 days. If the State fails to do so, the district court usually loses jurisdiction over the case. 297 Kan. at 448. Whether a defendant's statutory right to a speedy trial has been violated is a question of law over which we have unlimited review. 297 Kan. at 451. Likewise, interpretation of the UMDDA as well as determination of jurisdictional issues involve questions of law over which our scope of review is unlimited. *State v. Alonzo*, 296 Kan. 1052, 1054, 297 P.3d 300 (2013).

*Substantial Compliance with the UMDDA*

The purpose of the UMDDA is to prevent indefinite suspension of pending criminal charges while a prisoner is incarcerated following conviction in another case. The Act seeks to prevent delays in the administration of justice by placing an obligation on the State to present pending charges for trial within a reasonable amount of time. *Burnett*, 297 Kan. at 453; see also *State v. Dolack*, 216 Kan. 622, 634, 533 P.2d 1282 (1975) (the UMDDA permits prisoner to obtain speedy trial guaranteed by Kansas Constitution as legislatively defined). "Under the UMDDA, 'the passage of the statutory period . . . must be treated as conclusive of undue delay if all other conditions are met.' But substantial compliance with the UMDDA is sufficient to invoke its protections." *Burnett*, 297 Kan. at 453 (quoting *State v. Stanphill*, 206 Kan. 612, 616*, 481 P.2d 998 [1971]). Accordingly, the first question we must answer is whether Eaton substantially complied with the notice requirements of the UMDDA.

K.S.A. 2019 Supp. 22-4301 provides, in relevant part, as follows:

"(a) Any inmate in the custody of the secretary of corrections may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing, addressed and delivered to the court in which the indictment, information, motion to revoke probation or complaint is pending, to the county attorney charged with the duty of prosecuting it and to the secretary of corrections. Such request shall set forth the place of imprisonment."

Kansas appellate courts have repeatedly found that substantial compliance is sufficient for a prisoner to invoke the provisions of the UMDDA. See *Burnett*, 297 Kan. at 453; *Sweat v. Darr*, 235 Kan. 570, 575, 684 P.2d 347 (1984); *State v. Foster*, No. 117,118, 2018 WL 4039455, at *4 (Kan. App. 2018) (unpublished opinion); *State v. Woods*, No. 117,294, 2018 WL 1770556, at *3 (Kan. App. 2018) (unpublished opinion);

8

*State v. Guthrie*, No. 115,631, 2017 WL 1197257, at *5 (Kan. App. 2017) (unpublished opinion).

Unfortunately, none of these cases define the term "substantial compliance" as used in the context of the UMDDA. Nevertheless, the Kansas Supreme Court has defined the term in relation to notice statutes to mean "'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.'" *Myers v. Board of Jackson County Comm'rs*, 280 Kan. 869, 874, 127 P.3d 319 (2006) (quoting *Orr v. Heiman*, 270 Kan. 109, 113, 12 P.3d 387 [2000]). More recently, our Supreme Court has explained that "[o]bviously, that standard is something less than strict compliance." *Nguyen v. State*, 309 Kan. 96, 104, 431 P.3d 862 (2018) (citing *Myers*, 280 Kan. at 874).

Here, Eaton contends that he substantially complied with the UMDDA and that any compliance failures were due to circumstances beyond his control. In particular, Eaton argues that the purpose of the UMDDA was met because both the Leavenworth County Attorney and the district court had actual notice of his application. Although the State argues that we should not find that Eaton substantially complied with the notice provisions of the UMDDA, the Leavenworth County Attorney's Office candidly admits that it received actual notice of Eaton's application in November 2016.

We find the situation presented in this case to be similar to that presented in *State v. Lomon*, No. 116,497, 2017 WL 1535229, at *1 (Kan. App. 2017) (unpublished opinion). In *Lomon*, an inmate at the Hutchinson Correctional Facility (HCF) submitted a written request to prison authorities seeking to invoke the provisions of the UMDDA in a case pending against him in Morris County. However, the HCF officials refused to forward the inmate's application to either the district court or the county attorney for a reason not material to this appeal. As a result, the inmate mailed a handwritten request—labeled as a "disposition of detainer"—to the Morris County Attorney. However, the

9

inmate failed to include the case number or send a copy of the document to the district court.

Notwithstanding the inmate's failure to strictly comply with the notice provisions set forth in the UMDDA, the district court dismissed the pending charges against the inmate. In doing so, the district court explained that it was not the inmate's fault that the UMDDA application had not been mailed out by HCF authorities. On appeal, this court affirmed the district court's dismissal of the charges because the inmate had taken "sufficient action" to invoke the UMDDA despite the procedural deficiencies in his subsequent handwritten request to the Morris County Attorney. 2017 WL 1535229, at *4. The *Lomon* panel also found that prison officials should have passed the UMDDA application to the necessary parties and not "create a barrier to a prisoner pursuing his legal options." 2017 WL 1535229, at *4.

In this case, it is undisputed that Eaton had been placed in KDOC custody in an unrelated criminal action. In addition, it is undisputed that Eaton was still detained in the Wyandotte County Jail at the time he filled out his UMDDA application regarding the charges pending against him in Leavenworth County. Further, it is important to note that Eaton filled out a UMDDA application form that was provided to him by the Wyandotte County Sheriff's Office, which operates the Wyandotte County Jail.

A review of the UMDDA form reveals that it was fully completed by Eaton. In particular, on the face of the UMDDA form, Eaton included:

- his name and his social security number;
- the reason for his incarceration in the Wyandotte County Jail;
- his status of being sentenced to the custody of the KDOC;

10

- a request directed toward the Leavenworth County Attorney that his detainer either be "dropped" or that he "stand trial" within "the prescribed period of time as granted by Law or that it be considered null and void;"
- his signature;
- the date of the application;
- the Leavenworth County case number;
- the date that the Leavenworth County case was filed or the warrant was issued; and
- the specific crimes charged against him in Leavenworth County.

In addition, the UMDDA application form was notarized by Michelle A. Dudgeon, who was a Program Assistant with the Wyandotte County Sheriff's Office.

The record on appeal also includes the envelope in which Eaton's UMDDA application was mailed. The return address is stamped on and states that it was sent by the Wyandotte County Sherriff's Office. In contrast, Eaton's name and inmate number is handwritten above the mailing address. In addition, the envelope is addressed to the Leavenworth County District Court.

According to Eaton, the Program Assistant at the Wyandotte County Jail provided him with the UMDDA application form. He also testified that after the form was completed, the Program Assistant took the form and she—or someone else in the sheriff's office—mailed it for him. Regardless who actually mailed the envelope, we note that both the envelope and the UMDDA application were filed stamped by the Clerk of the Leavenworth County District Court on November 3, 2016 at 1:19 p.m. Furthermore, the State acknowledges that the Clerk of the Leavenworth County District Court forwarded copies of Eaton's UMDDA application to the county attorney's office as well as to the district court judge assigned to the case on November 7, 2016.

As the State points out, Eaton failed to strictly follow the notice requirements of the UMDDA because his form was not mailed directly to the Leavenworth County Attorney or to the Kansas Secretary of Corrections. On the other hand, a review of the record reflects that Eaton did comply with the UMDDA in several other respects. In particular, he submitted the application "in writing" and it was "addressed and delivered to the court in which the . . . complaint was pending." Moreover, the application "set forth the place of imprisonment"—which was, at that time, the Wyandotte County Jail.

Similar to *Lomon*, the record in this case suggests that Eaton was dependent upon the Wyandotte County Sheriff's Office to mail his completed UMDDA application to the appropriate parties. We note that the State does not dispute Eaton's testimony that the Program Assistant took the UMDDA application form from Eaton as soon as he completed it so that it could be mailed. Although the State submitted a notarized letter from the warden of the Wyandotte County Jail listing the services provided by the facility to inmates, it does not speak specifically to Eaton's case. Furthermore, Eaton's testimony regarding the process used to mail the UMDDA application is supported by the return address on the envelope that states that it was sent from the Wyandotte County Sheriff's Office.

Regardless, the State fails to show how the failure to directly serve the Leavenworth County Attorney with the UMDDA application prejudiced the State's ability to prosecute this case. As discussed above, the county attorney's office had actual notice of Eaton's UMDDA application in November 2016—just a few days after the form was received by the Leavenworth County District Court—yet the case did not proceed to trial. In addition, during the course of this litigation, Eaton filed several motions in which he brought his UMDDA application to the attention of both the county attorney and the district court. Nevertheless, this case languished for more than two years after the county attorney and the district court received actual notice of Eaton's UMDDA application.

12

The State compares this case with *Foster*, 2018 WL 4039455. Certainly, there are some similarities between the two cases. Notably, like Eaton, the defendant in *Foster* was being held in the Wyandotte County Jail awaiting transport to a KDOC facility. Like Eaton, the defendant completed a UMDDA application provided to him by a Program Assistant in the Wyandotte County Sheriff's Office. In turn, the UMDDA application was mailed to the Johnson County District Court but not to the Johnson County District Attorney's office.

Significantly, and unlike the present case, the district attorney's office in *Foster* did not receive actual notice of the UMDDA application filled out by the defendant until several months after it was filed. The *Foster* panel understandably found this fact to be "important because receipt of the document [by the prosecutor] triggers the running of the 180 days to bring the inmate to trial. 2018 WL 4039455, at *5 (citing K.S.A. 2014 Supp. 22-4303). By contrast, it is undisputed in this case that the Leavenworth County Attorney's Office was provided actual notice of Eaton's UMDDA application within a matter of days after it was filed.

We agree with the *Foster* panel that simply filing a UMDDA application with the district court clerk's office is not sufficient to constitute substantial compliance with K.S.A. 2019 Supp. 22-4301(a) because it does not put a prosecutor on notice to start running of the 180-day time period in which the defendant must be brought to trial. However, under the unique circumstances presented in this case, we find that the filing of the UMDDA application combined with the county attorney's actual notice of Eaton's request to invoke the protections of the UMDDA were sufficient to constitute substantial compliance. Furthermore, we find that this decision is consistent with the legislative intent of the UMDDA to "prevent indefinite suspension of pending criminal charges" and for "courts to hear cases within a reasonable amount of time." *Burnett*, 297 Kan. at 453.

13

*Time Calculation*

The State also contends that the district court improperly calculated the amount of time that elapsed after the UMDDA protections were triggered. Regarding the issue of time calculation under the UMDDA, K.S.A. 2019 Supp. 22-4303 provides that once a district court and county or district attorney receive notice of a defendant's UMDDA application, the State generally has 180 days to bring the case to trial. The failure to bring the case to trial within 180 days is to be treated as conclusive of undue delay unless: (1) the district court for good cause grants additional time; (2) the parties stipulate to a continuance; or (3) a continuance is granted on notice to the attorney of record and opportunity to be heard. *Burnett*, 297 Kan. at 458.

Consistent with our prior cases, we find that the 180-day statutory period was triggered on November 7, 2016. As addressed above, this is the date on which the Leavenworth County Attorney's Office received actual notice of Eaton's UMDDA application. See *Woods*, 2018 WL 1770556, at *4 (using date on which the county attorney acknowledged receipt of the UMDDA application to trigger 180-day limit). Between November 7, 2016, and June 5, 2018—the date on which Eaton filed his second pro se motion to dismiss—575 days elapsed. Although this was well above the 180 days allowed under the provisions of the UMDDA, we must determine how many of those days should be charged to Eaton or otherwise fall within the exceptions set forth in K.S.A. 2019 Supp. 22-4303.

Between November 7, 2016, and February 7, 2017—when Eaton's attorney requested a continuance of the preliminary hearing—92 days elapsed that should be charged to the State. Moreover, between May 19, 2017 (the date of the preliminary hearing at which Eaton was bound over for trial), and September 18, 2017 (the date on which Eaton filed a motion for continuance), an additional 122 days elapsed that should

be charged to the State. Thus, by that point in time, 214 days chargeable to the State had already expired.

Although the State argues that the 180-day clock stopped after each time Eaton requested a new attorney, the record reflects that he did not request a new attorney until September 27, 2017, which was well after the 180 days had already run. In addition, the State argues that the UMDDA clock stopped after each time Eaton filed a motion to dismiss. In support of this argument, the State cites *Woods*, 2018 WL 1770556, at *4-5. However, a review of the record in this case reveals that the district court never ruled on Eaton's first pro se motion to dismiss. Instead, on September 27, 2017, the district court gave Eaton the choice of either having new counsel appointed or proceeding pro se on his motion. Eaton decided to request a new attorney and the case was continued with the time charged to him. Regardless, by that point, the 180 days had already run.

Accordingly, we affirm the district court's dismissal of this case based on the State's failure to bring the charges filed against Eaton to trial within the 180-day time period set forth in the UMDDA.

Affirmed.